IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| RONNELLE WATSON | § | |
| VS. | § | CIVIL ACTION NO. 1:20cv93 |
| GIDEON A. DANIEL | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Ronnelle Watson, an inmate confined within the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se*, filed this civil rights lawsuit against Gideon A. Daniel, a physician assistant. Plaintiff alleges the defendant was deliberately indifferent to his serious medical needs. This matter was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Pending before the court is a motion for summary judgment filed by the defendant (doc. no. 20).

Factual Allegations

Plaintiff states he suffers from a hernia. He alleges he was in terrible pain and was seen by the defendant on September 10, 2019. He states the defendant said that there was nothing he could do about his medical problem. Plaintiff asserts the defendant refused to provide treatment.

Defendant's Motion

The defendant relies, *inter alia*, on the defense of qualified immunity. In support of his motion, the defendant has submitted an affidavit from Steven Bowers, a physician, who is currently the Legal Coordinator for the University of Texas Medical Branch-Coordinated Managed Care. Dr. Bowers states, in part, as follows:

> Mr. Watson is a 74-year-old male with a medical history of hypertension, gout, hypersensitivity lung disease, Gastro-Esophageal Reflux Disease (GERD), inguinal hernia, low back pain, angina pectoris, coronary artery disease, hyperlipidemia, chronic kidney disease, and enlarged prostate.

In the following timeline I have outlined the care provided by PA Daniel as well as the care for Watson's complaints of hernia pain.

September 6, 2019: A sick call request is received from Watson asking to see Dr. Mills about his prescriptions for loratadine (Claritin) and benzoyl, and for complaints that his hernia had been hurting him. That same day, Watson was scheduled for nursing sick call but was a no show for his appointment.

September 10, 2019: The record notes Watson was scheduled for a MD/MLP (mid-level provider such as a nurse practitioner or physician assistant) for a request for Loratadine, acne cream and for his annual physical. There is no mention of his hernia pain noted on the appointment reminder.

Watson is seen by PA Daniel for his annual physical exam, and a request for Claritin and acne cream. PA Daniel notes the patient was in no acute distress. Watson's vital signs were within normal limits, his physical examination was normal with the following exceptions: refractive error of the eyes, and cardiovascular-hypertension and high cholesterol. Watson's housing and work restrictions were reviewed. PA Daniel examined Watson's head, eyes, ears, nose and throat. Watson's ears had dull light reflex, throat had no edema, and chest was clear to auscultation and percussion. PA Daniel's assessment was congestion and follicular eruptions (acne). PA Daniel ordered loratadine one tablet for 30 days-keep on person, renewed Watson's ibuprofen 800mg tablet-keep on person since it is due to expire on September 17, 2019 and ordered a PSA serum test for a gout diagnosis. There is no record that Watson complained of hernia pain during this visit.

September 16, 2019: Watson is scheduled for a nursing sick call appointment for his September 6, 2019, sick call. He is again a no show for his appointment. The appointment was not rescheduled.

October 4, 2019: Watson was seen by PA Daniel for a request for lotion and tar shampoo. The examination showed Watson had dry skin with no exudate. Watson was assessed with dermatitis and myalgia. PA Daniel ordered tar shampoo, body lotion, and renewed his allergy medication for 30 days.

October 9, 2019: A sick call request was received from Watson asking PA Daniel if he had ordered his hernia medication. The response from a Ross RN/Steven (registered nurse) states, "You were ordered Ibuprofen on 9/10/19. You may go to the pill window for daily doses until KOP (keep on person) is available on or about 10/10/19."

November 7, 2019: A sick call request was received from Watson complaining that his hernia is causing him serious pain and is getting larger and beginning to move in to his groin area causing his stomach to also hurt. He indicated he desperately needed to get some medical attention for his hernia. The same day, Watson is seen in nursing sick call. The record notes Watson requested to see a provider and that the hernia could be pushed back in reducible. Watson was advised to continue taking Ibuprofen as ordered for pain and that he would be referred to a provider.

November 20, 2019: A sick call request is received from Watson asking for medical renewals and "I would like to know if my hernia belt [is here]?" Watson was scheduled for nursing sick call.

<u>November 25, 2019</u>: Watson is seen by Nurse Practitioner Ramos-Gutierrez for multiple issues including hernia pain. NP Ramos-Gutierrez performed an examination covering all Watson's complaints. The hernia examination showed his abdomen had bowel sounds present, a right inguinal bulge that was difficult and tender to reduce. NP Ramos-Gutierrez ordered medication for Watson's other complaints, ordered meloxicam 15mg for pain, and referred Watson to Hospital Galveston's (HG) General Surgery clinic for evaluation of his hernia.

<u>December 23, 2019</u>: Mr. Watson was seen in the HG General surgery clinic where he was evaluated for his hernia. The record notes hernia contents were reducible and remain reducible unless patient is active. The defect was small and caused him little discomfort. He had no signs of incarceration or strangulation. The hernia had been present for 9 years and had never caused more issue than minor discomfort. Patient was not likely to be approved for hernia repair surgery by the TDCJ system and given his age, comorbidities, and the mild discomfort it was causing-we do not recommend repair at this time. The plan of care was to return to clinic if symptoms worsen or if hernia become incarcerated, to report to the emergency department if patient ever develops signs of strangulation and plan discussed with patient in detail who voiced understanding.

## Procedural Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

On summary judgment, "[t]he moving party has the burden of proving there is no genuine [dispute] of material fact and that it is entitled to judgment as a matter of law." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246 (5th Cir. 2003); *see also Celotex Corp. v. Catrell*, 477 U.S. 317, 323 (1986). If the moving party satisfies this burden, "the non-moving party must show that summary judgment is appropriate by setting forth specific facts showing the existence of a genuine issue concerning every component of its case." *Rivera*, 349 F.3d at 247. The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory alllegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995); *Brown v. Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

As summary judgment is a final adjudication on the merits, courts must employ the device cautiously. *Hulsey v. State of Tex.*, 929 F.2d 168, 170 (5th Cir. 1991). In prisoner *pro se* cases, courts must be careful to guard against premature truncation of legitimate lawsuits merely because of unskilled presentations. *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989) (quoting *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980)). Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party. *Rubenstein v. Adm'rs of the Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir. 2000).

Analysis

*Qualified Immunity*

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Evaluating qualified immunity is a two-step process, with the plaintiff bearing the burden of showing that the defendant is not entitled to immunity. *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013). First, the court must determine whether a plaintiff's allegations, if true, establish a constitutional violation. *Hope*, 536 U.S. 736. Then, if a constitutional right was violated, the court must determine whether the right was clearly established at the time of the violation. *Freeman v. Tex. Dep't of Crim. Just.*, 369 F.3d 854, 863 (5th Cir. 2004). A specific right is clearly established only if its contours "are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir. 2000).

A qualified immunity defense alters the typical summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). In such cases, once the defense is pleaded, "the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue

as to whether the officials allegedly wrongful conduct violated clearly established law." *Id*.

*Deliberate Indifference to Serious Medical Needs*

To establish a violation of the Eighth Amendment to the Constitution based on the denial of medical care, a prisoner must allege a defendant was deliberately indifferent to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). A defendant is deliberately indifferent to serious medical needs only if he knows an inmate faces a substantial risk of serious harm and disregards the risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994). Disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs. *Norton v. Dimanzana*, 122 F.3d 286, 292 (5th Cir. 1997). In addition, a delay in providing medical care does not rise to the level of a constitutional violation unless the delay resulted in substantial harm. *Easter v. Powell*, 467 f.3d 459,464-65.

*Application*

Plaintiff states that when he saw the defendant on September 10, the defendant did not provide any treatment for his hernia. The medical records indicate plaintiff received no treatment for his hernia until November 25, when Nurse Practitioner Ramos-Gutierrez ordered additional pain medication and referred plaintiff to the surgical clinic in Galveston. As a result, the defendant's alleged failure to treat plaintiff caused plaintiff to experience a delay of approximately 75 days in receiving treatment.

Based on plaintiff's allegations, it could be concluded the delay in receiving treatment was due to the defendant's deliberate indifference. However, as stated above, a delay in receiving treatment does not violate the Constitution unless the delay resulted in substantial harm. The record does not demonstrate plaintiff's condition worsened significantly during the delay or that the delay changed the treatment that was ultimately provided. In fact, the record indicates it was determined that, in light of plaintiff's other medical issues, no surgical intervention was appropriate at that time.

The delay plaintiff experienced is regrettable. However, the record does not reveal a genuine dispute of material fact as to whether the alleged failure to act by the defendant violated the Constitution. The defendant is therefore entitled to summary judgment based upon qualified immunity.

## Recommendation

The motion for summary judgment should be granted.

## Objections

Objections must be (1) specific, (2) in writing, and (3) served and filed within 14 days after being served with a copy of this report. 28 U.S.C. § 636(b)(1).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1429 (5th Cir. 1996) (*en banc*).

SIGNED this 11th day of May, 2022.

_____
Zack Hawthorn
United States Magistrate Judge